Good morning, Chief Judge Sykes. May it please the Court. David Franklin on behalf of Plaintiff Appellant Dr. Alan Braid. If I may, I'd like to first address interpleader jurisdiction and then turn to the abstention issue. So as the District Court recognized, jurisdiction is secure here because all of the requirements of statutory interpleader have been met. There's minimal diversity among the claimants. The claimants are adverse because only one can collect on a judgment. The amount in controversy, of course, exceeds $500. And Dr. Braid has deposited the disputed amount with the District Court. Now, Umicus argues that there is no limited identifiable fund here, but that's not true. The $10,000 that was deposited by Dr. Braid is the amount that must be awarded to a successful SB8 plaintiff. Can they get more? They could conceivably get more, but that doesn't mean that the interpleader plaintiff has to deposit more in order to trigger the jurisdiction of the interpleader court. What needs to be deposited is the amount that is disputed among the claimants. Well, if it's more, but if they could get more, why isn't that disputed, especially if one of the claimants asks for more? Right. But, you know, one of the claimants says, I want $100,000. The doctor deposits $10,000. Why is that enough? Because the disputed amount is the amount that all of the claimants have claimed an entitlement to here. And here we have Mr. Gomez, who didn't ask for any damages because, but nonetheless, under Texas SB8, the court is required to award the $10,000. We have Mr. Domingo, who said, I want $10,000 and no more. And yes, Mr. Stille, who asked for more. But, you know, the analogy that we make in our brief, I think it's a good one, is to an uncertain inchoate claim for attorney's fees. That does not have to be part of the deposited amount in order to invoke interpleader jurisdiction, even though it could conceivably be at issue in a state court proceeding or in the interpleader proceeding as well. So Dr. Brate has followed the text of the interpleader statute to the letter. Amicus tries to paint this, I think understandably for his side, as an unorthodox, unconventional use of interpleader. But what's really extraordinary here is not the use of interpleader, but I would submit what's extraordinary is SB8. It's a statute that intentionally is designed to expose defendants like Mr. Brate to multiple, duplicative, adverse claims with no way to resolve them in a single forum because of the anti-transfer provisions. Why can't he resolve it? That is, I mean, the bottom line is, why are you in federal court? Why can't all these guys be in Texas? Because SB8 in multiple ways confounds the ordinary process of adversary testing and litigation. So as we've already said, it invites a potentially infinite set of plaintiffs. Right, but in the federal interpleader court under the interpleader statute, the court can assert jurisdiction in a single proceeding over all claims that have been or could be brought by that set of claimants. And it has broad injunctive authority to issue an injunction with respect to all such claims. The Texas court by design under SB8 cannot do that. So a defendant, for example, cannot raise issue or claim preclusion as a defense. A defendant cannot raise dispositive constitutional defenses, even relying on case law that was good law at the time that he took the relevant action that may have later been overruled. We all know what that was in reference to. There is the anti-transfer provision that essentially prevents the Texas courts from consolidating these cases in a single forum without permission of all parties, which is not going to be forthcoming here. Mr. Franklin, can we go back for just a second to the 13th, the interpleader, the statutory interpleader question? And can you focus with us on the first, in his complaint, in his federal complaint, Dr. Braid brings essentially six counts. He styles them as relief. Five of them are various federal constitutional challenges to the restrictions, the limitations of SB8, as you were just describing. The first of them is for the interpleader relief. If you focus on the first claim for relief and set the two through six aside, what exactly does Dr. Braid want the district court to do with the first claim for relief? So he wants the court to fully and fairly resolve the entitlement to the $10,000 stake. Of course, his preferred disposition is to get the stake back on the basis either of his constitutional defenses or on another basis. The interpleader court could decide, for example, that none of the claimants have standing under Texas law. So there are other bases upon which he could prevail there. But short of that, Dr. Braid wants this endless potential chain of litigation to be over. So in your view, would it be fair to say he wants final dispositive relief as to the $10,000 fund that he's put on deposit? Either that he owes nobody one penny, that he owes person X 10,000, no more, that liability would be apportioned in some way, all of that he wants resolved by the federal district court? Yeah, he has his preferences among those, but that's essentially what he's seeking. I agree with that. Okay. And as we're speaking right now, and I'm going to ask Mr. Paul the same question, what is your understanding of the state of in Texas, in any level of Texas court relating to the September 6th, 2021 abortion that's the subject matter of these claims that are brought under SB8? Right. So the first thing I'll say is it's a mess, right? And that's by design. This is Texas SB8 in action, right? But to answer your question, so we have the three claimants who were interpleaded here. Gomez's original SB8 action was voluntarily dismissed without prejudice. He then refiled after the initiation of this interpleader action, that refiling was initially enjoined pending the action in federal court. And then after the abstention decision, that injunction was lifted. He then sued again and was non-suited on standing ground. So Gomez is out. However, because SB8 works the way it does, he could refile at any time. Okay. So that's Gomez. Stille's original SB8 lawsuit is still pending. To my knowledge, it has not been served. And Domingo has voluntarily non-suited his case without prejudice to refiling. So again, he or anyone else in the world could come out of the woodwork. We referenced in our briefs, Mayor Thomason of Big Spring, who has filed a pre-suit petition under Texas Rules of Civil Procedure 202. So that case could ripen into an SB8 case at any time. I was going to say there's no, what you might think of as a limitations period or something that would prevent Jane or John Doe from bringing a claim tomorrow. There's no limitations period that would prevent that tomorrow. That's true. That's true. This is, I think, properly characterized as an unusual use of interpleader, just like SB8 is an unusual way of enforcing Texas public policy. What's at issue here is functionally a fine for performing an illegal abortion under the Texas heartbeat law. And the enforcement scheme was designed to avoid ex parte young litigation to bring a pre-enforcement challenge, pre-dobs against this heartbeat law. And so we have an unusual situation where Texas public policy looms large on the abstention question because ultimately the district court here abstained under an abstention doctrine that applies to declaratory judgment actions, which comprise five of the six counts in Dr. Braith's interpleader complaint here. So we have to be aware of the real gravamen of what's going on here in deciding this equitable question of abstention, but also the nature of the remedy that you're seeking is an interpleader, which is an equitable remedy. It's statutory and has expanded well beyond, as a statutory matter, well beyond what the equitable doctrine was designed for. So as I understand your, the thrust of your argument is that while this may be out of the ordinary, the whole domain here is out of the ordinary. And so a pragmatic approach to the elements, the statutory elements of interpleader, particularly with respect to the character of this fund and whether that first, I guess it's the second element, we have minimal diversity here among the claimants and Dr. Braith, but the character of this fund, it's not an insurance policy that's been, policy limits have been tendered to the court and the court can sort out who's entitled to an insurance policy. That's classic interpleader. This is something very different. It's a $10,000 minimum fine. Let's call it a fine because that's what it is functionally. It's not formally a fine, but that's what it is. It's just payable to a private bounty hunter. And the statute in Texas doesn't cap damages. And the argument here by the court appointed amicus defending the district court's decision is that interpleader should not be permitted to be used to cap damages. So that second element of an amount at stake has not been fully tendered to the court. Only $10,000, the minimum fine has been tendered to the court. How do we approach that threshold element before we get to the equities and the deference and comedy considerations that are inherent in both abstention doctrines that are at issue? So I do want to get to abstention. I know I'm already into my rebuttal time here. It's a complicated case. It's a federal court's question for the students. So an unusual one. Very unusual. So I guess what I would say is that this is not an attempt to use interpleader to cap damages. So there could be questions about whether there are additional damages to be sought beyond the $10,000. And your question, Judge Kirsch, went to that to some degree. We don't think the court needs to reach that in order to determine that interpleader jurisdiction is proper here. We have our arguments that we can make about that. And I can preview those for you if you're interested. But that doesn't go to the question of jurisdiction. So jurisdiction is not only proper here. It's actually quite appropriate in light of the purposes of the interpleader statute. The interpleader statute represents a congressional policy that comedy concerns have to give way when you've got multiple adverse claimants from different states, minimal diversity, but it's an interstate matter, who are fighting over a common fund. And interpleader cases inherently involve federal courts deciding state law issues, at least since Erie, that's what they involve, that are raised or could be raised in state court. And yet Congress has continually expanded the availability of interpleader to resolve those kinds of adverse claims. And the Supreme Court has repeatedly said that the interpleader statute and rule need to be construed broadly. So yes, I don't take issue with your description that this is both an unconventional use of interpleader and a very unconventional state statutory scheme. But I would just add one gloss on that, which is that in light of that unusual state scheme, it's actually a paradigmatic application of what interpleader was designed by Congress to do. And with that, I'll reserve whatever time you have. Before you sit down, we do need to spend a little time talking about which, if any, abstention doctrine domain we're working with here. The district court made one judgment call about that, and we're here litigating that judgment. Assuming we have interpleader jurisdiction, the question is whether abstention is proper, and the district court used Wilton-Brilhart abstention applicable to declaratory judgment actions. And the question was whether that was proper. That's a much broader abstention doctrine than any other conceivably applicable abstention doctrine here, the primary one being Colorado River abstention, which is narrower. If you would spend just a few minutes addressing that. Yes, I'd be happy to. So, Wilton-Brilhart does not apply here. Wilton-Brilhart is limited to the Declaratory Judgment Act, which has its distinctive discretionary text. And here we have an argument that the declaratory judgment counts, and the complaint are sort of the tail that's wagging the dog here. I understand the argument, but the case law is clear, including this court's case law in R.R. Street, that district courts have a virtually unflagging obligation to exercise jurisdiction over the non-declaratory claims in a complaint so long as they are not wholly dependent. That's the phrase this court has used, wholly dependent under the declaratory ones. And I think Amicus doesn't really even try to argue that the claims are wholly dependent here. They're independent. They have a distinct jurisdictional basis. They seek different relief. I'm talking about the interpleader claim now. And the outcome of the interpleader claim does not stand or fall with the declaratory ones. Well, how so? Because I think your whole argument is that your client wants the $10,000 back based upon the five claims that have nothing to do with the interpleader claim. Yeah. So with respect, I don't think that's our entire argument, right? So there are ways that we can prevail on the interpleader claim without prevailing on the declaratory claims. I mentioned earlier the idea that nobody has standing, right? So that's a clear example. And the interpleader action gives us injunctive and equitable relief that the declaratory claim can't give us. So they stand on completely different footing from one another. And I think the idea that the sort of comity can be appealed to in the abstract here without tying it to one of the abstention doctrines through which those comity concerns are meant to be channeled is just misguided. What we've got here is a federal interpleader claim and state proceedings that are or could be ongoing that concern the same subject matter. Okay. That's Colorado River, right? And as you said, Chief Judge Sykes, Colorado River applies only in narrow and exceptional circumstances. And there's been no attempt made here, I think understandably, to argue that those circumstances are present. So I can talk to you about why Pullman and Burford and the other abstention doctrines don't apply. They don't, right? So what we've got here is an attempt to use Wilton Brillhardt to wag the tail of the dog. My metaphor got a little tangled there, right? No, no. My poor analogy, not yours, right? But we've got an attempt to say, well, there are declaratory claims in this complaint, right? And therefore, the interpleader claim has to be abstained from. When in fact, it's just the opposite. Because the interpleader claim is independent, right? It should be entertained. That's Congress's intent here. And oh, by the way, that means that the declaratory claims under R.R. Street are themselves also entertained because we want to avoid piecemeal litigation. So that's certainly our position on abstention. Thank you. Thank you, Your Honor. Morning. Good morning. May it please the court. I think it's important to more methodically go through the jurisdictional issues. But first I want to answer Judge Scudder's question about status. And my understanding is essentially the same as Mr. Franklin articulated. The bottom line is there's only one pending case remaining. And that's Mr. Stilley's. Relatedly, I'm not so sure that Mr. Gomez could sue. Because while SB 8 precludes application of non-mutual claim preclusion, it does not preclude application of mutual claim preclusion where there is identity of parties. Could Domeno re-institute his suit? I suppose he could because it appears he took a non-suit without prejudice. And then finally, related to that, just to be clear, there is a statute of limitations. It's four years and it runs this September. So with that, let me let me address that. Can I pause you real quick? Yes. Is there any is there any legal significance to this? You status of it. Is there any legal significance to that in your view? I think it further well in in in the realm of abstention, I think I think it further reduces the incentive for a federal court to get involved. This is not the multi multi plaintiff case that Dr. Bragg feared at this point. And there's no indication that any suits are forthcoming. So I do think that it's something to consider. It's certainly not dispositive, but I think it's relevant to a court's discretion on whether to retain jurisdiction. As to jurisdiction, there are two fundamental problems here. First of all, there is not a specific identifiable fund. There is an inchoate contingent claim against Dr. Braid's general assets. And secondly, even if I'm wrong about that, the deposit here is insufficient. So let talk about the fund. As I say, the underlying plaintiffs made a claim against Dr. Braid's general assets, not against an identifiable fund that is in the words of the statute, in his custody or possession. That's not like an insurance policy that is in his custody or possession. And that's just not the kind of claim that can be litigated in interpleader. The only thing that gives this case the allure of a proper interpleader action is that SBA prescribes a minimum award. Dr. Braid deposited that minimum award and there are multiple claims, or there were. But by depositing the minimum award, all Dr. Braid has done is to create an artificial fund. And we know it's artificial because there's no fixed definition for determining what the appropriate amount of the award is. Courts have discretion. If SBA prescribed a flat $10,000 award and no more, this might be a different case. But as it is, all we have, as I say, is a contingent inchoate claim against his general assets. If this is a proper use of the interpleader statute, then defendants subject to virtually any contingent or inchoate claim could manipulate jurisdiction by using the interpleader statute's generous venue and service of process provisions to oust state courts of jurisdiction and deposit a minimum that he thinks may be owed. Think of it. Can I ask you if you, and Mr. Franklin may want to respond to this too, if you think about classic interpleader, my understanding in preparing for today is that there is some flexibility in, not in SBA, but set this aside, this fact pattern aside entirely, in classic interpleader as to the deposit of the, the amount of the deposit in a fund. So for example, 1335 jurisdiction could be exercised in an insurance dispute where say policy limits are 800 or a million and 850,000 is put on deposit because all indicators to all parties at the time acting in good faith are that the dispute is, there's really no way there's more than $850,000 in, you know, of injuries at stake. And when it turns out that there's a million, 1335 jurisdiction is not defeated that way. So there is, what's the point of the observation? There is some flexibility, isn't there, isn't there in classic interpleader law as to the amount of the fund deposited? I, I completely agree. If you have, for example, maybe this is your example, but let me just flesh it out a little bit more. If you have a, an insurance company with a policy and the, and the policy holder sues the insurance company claiming that they've withheld the policy proceeds in bad faith, the insurance company can deposit the policy proceeds and, and create an interpleader action. And if there are consequential or punitive damages beyond that, that's a different matter. Totally agree with that. But we have to think about, okay, now we bring it back. Excuse me. We bring it back to this case. How do we determine what the appropriate amount to deposit is? And I agree with Dr. Braid on this. It depends on what the interpleader plaintiff quote, asserts to be the subject matter of the controversy. Well, what does he assert to be the subject matter of the controversy? The three claims that have been made against him, which he attached to his interpleader claim. And as between Dr. Braid and those claimants, the largest amount in controversy is a hundred thousand dollars. What would your conclusion be if right after the oral argument, there was a supplemental deposit of 90,000? I think that that could cure the jurisdictional problem, the deposit problem. I still think that there's an inchoate contingent claim here because going, going back one step, think again about a contract or a tort case where liability is disputed. Could a defendant deposit in court the minimum that just in case he doesn't win on liability, the minimum that he thinks the plaintiff is entitled to? I think that that would, that's essentially what's going on here. And that would unduly broaden the scope of interpleader jurisdiction and encourage forum shopping, which this court has said is not the proper purpose of the statute. Now, returning back to the deposit requirement, why is the largest amount in controversy between Dr. Braid and the claimants? Why is that the proper amount? Because there's no realistic opportunity of recovery of more. That's the baseline $10,000 fine. That's exactly right. That's the reasonable amount. But if you want a statutory hook, look at 1335A2, which says that the deposit is to, quote, abide the judgment of the court, that is to comply with or obey. And a court could enter a judgment for a hundred thousand dollars. And finally, there's absolutely no basis for that in this context because there's no injury. So even if the statute, the violation of the statute, is sufficient injury under Texas law to provide standing for these three bounty hunters, only two of whom remain in the case apparently, there's just no basis in anything in this record to assume as a matter of real practicality that anything more than the baseline $10,000 fine is going to be awarded in this case. Well, they have no relationship to the abortion in question. They have no relationship to the state of Texas. They have no relationship to Texas public policy. They're just bounty hunters.  They're not going to get more than $10,000. Understood as a practical matter. But as a subject matter, jurisdiction matter, you have to deposit the largest amount in controversy. Realistically in controversy. Well, I'll accept your point. That goes to the merits. I think that goes to the second phase, not the jurisdictional phase, but the second phase of an interpleader action. And so let's assume now that these jurisdictional requirements are met. What do we do with abstention? Well, Dr. Braid's core concern is that he can't get a fair shake in Texas. And I just don't think that that's correct. This court taught us in JV versus Woodward that state courts are co-equal to federal courts and are fully capable of respecting and protecting a plaintiff's constitutional rights. And there is no better evidence of that than number one, a Texas court, a trial court dismissed Gomez's suit for lack of standing and a Texas court of appeals affirmed that dismissal. And secondly, On different grounds, I think. It was, there's a footnote that might suggest that the court alternatively affirmed on standing, but it did affirm. And secondly, there's the Van Steen case, which is mentioned in the briefing. In that case, shortly after Dr. Braid filed this interpleader action, a Texas trial court ruled that the civil enforcement provisions at issue in this case were unconstitutional because they violate Texas's limits on standing and violate due process. Dr. Braid can get a fair shake in Texas and the straightforward way to litigate his defenses is by asserting those defenses in a Texas court, which section 209 F specifically allows him to. What about the anti-preclusion provision in SB 8? He could win one of these constitutional arguments in a Texas state court and, and still be vulnerable to. The same liability and $10,000 in damages for the $10,000 fine, because that judgment has no preclusive effect on some other bounty hunters action that that is correct. And there are ways to potentially deal with that. Number one is the MDL statute, the Texas MDL statute, which I mentioned number two, there's nothing precluding a state court from entering a stay pending resolution of other claims. And third, this is something I neglected to mention in the briefing, but Texas has its own interpleader rule. It's rule 43 of the Texas rules of civil procedure, very similar to rule 22. And it says persons having claims against the plaintiff may be joined as defendants and required to interplead. So there are ways to deal with the problem that you've identified. So, so SBA didn't close all doors. I don't think it, I think it closed many and there's no doubt that it's strong medicine, but this goes to your point that this is, this is a matter of substantial policy consequence to Texans. They wanted to deter violations of SBA. They did it in an unusual way, but that is their prerogative so long as those provisions are not unconstitutional. Now, it's not indefinite exposure, right? Given the anti-preclusion rule. So in other words, suppose, suppose, for example, just for discussion purposes, it went back to Texas and Dr. Braid resolved it for 10,000 bucks with one of these people. Okay. Now, given this, the language of SBA, it would be difficult to identify a good faith basis the moment that correct, correct. You would wonder what, what is the good faith basis for it? There's no possibility of double recovery. Just read the statute. There is no double recovery. That is a defense. Payment is a defense. And so, so it's, so the, the, what, what Dr. Braid understandably described, there could be a whole bunch of vexatious litigation, perhaps for a time, for a time. But the moment, the moment there's a judgment entered, 10,000 or more is paid. It's over. It is over. And so the question becomes, well, do, do we, it's not even a question of trust. It's, do we allow the Texas courts to handle that situation? And do we trust them as co-equal courts to deal with those sorts of claims that may have been filed after a payment is made? And I submit to you that we should. That's what J.B. versus Woodward in many other cases teaches. Now, which goes directly to what is the standard for abstention here? My, my friend on the other side suggests that it's, it's misguided to, to not pigeonhole this issue into one particular type of, of, of abstention. But again, J.B. versus is to potentially miss the federalism concerns that animate abstention doctrines generally. And while I think Wilton Brillhardt applies here, ultimately it's sort of a sideshow because there are significant federalism concerns. First of all, this case intrudes on ongoing proceedings. Secondly, it presupposes that the Texas court is, is an inadequate forum. And finally, this case potentially requires a federal court to flesh out a statute that has yet to be fleshed out and is of a, a matter of substantial policy consequence to Texans. Well, all interpleader does that by definition, doesn't it, in federal court? Because it takes the case from a state forum, moves it to a federal forum. It can, but this court in the Lexington insurance case taught us to be conservative and wary of dealing with novel questions of state law. And this action thrusts upon the court, the potential for having to resolve unresolved questions of state law. The last thing that I'll say is that deciding in Dr. Braid's favor would create both an inter-circuit split and an intra-circuit split. Coring taught us that this is an equitable remedy and that a court may exercise its discretion to decide whether to decide on comedy and equity grounds and dismiss if there's an inadequate and adequate remedy, just like a preliminary injunction. Vulcan materials did not change that. Vulcan materials doesn't mention coring. It did not involve a claim for interpleader. It involved a legal claim for monetary damages. As a practical matter, I understand what Vulcan materials says, you know, are these wholly independent? I think Mr. Franklin is right about that. They're not wholly independent, but as a practical matter, they are very much interdependent. This is very much the tail wagging the dog. And if I just may finish the sentence. And even if I'm wrong about that, we're still left with an interpleader action, which Coring has said a court may dismiss, and a declaratory judgment action, which the Supreme Court in Wilton and Brilhart said a court can dismiss. Can I ask one more question? Can I just confirm, there's been no injection, I want to ask Mr. Franklin this too, no injection of the doctrine of forum non-comedians in the litigation at any point by any party? Not that I'm aware of. Thank you very much. Mr. Franklin, I've used your time, but you can have an additional couple of minutes. Okay, I'll take it. Thank you. Three quick points. First of all, the interpleader statute speaks of money or property, right? So I think Amicus is incorrect in saying that the $10,000 was something other than money or property in his possession, right? So jurisdictionally, I think we're secure there. Second, Amicus tries to paint a kind of parade of horribles, where we allow interpleader here, then your standard issue tortfeasor facing many claims could try to use interpleader to do an end around state process. That's just not right, and it's important to understand why it's not right. Texas SB 8 is unique in that it makes every claimant adverse to every other claimant, okay? That is, to my knowledge, unprecedented in the way it operates. So what the court would be doing here would not expand interpleader jurisdiction into areas where it's conventionally not thought to be appropriate, because in a typical tort scenario, you don't have that kind of adversity. Third point, and I think this is important, Amicus says that you can get a fair shake in Texas if you're Dr. Braid. I think just even a cursory reading of SB 8 refutes that notion, right? Just the fact that there's a potentially unending parade of potential plaintiffs, total strangers, right, who can come out of the woodwork and seek recovery here, I think refutes that notion. What about his point, though, Mr. Franklin, that Dr. Braid is fully capable in the Texas courts of challenging on federal constitutional grounds the various limitations or restrictions that are in the statute that he's understandably concerned about? He's not. I mean, Texas SB 8 purports to say, for example, to Dr. Braid, you can't raise a constitutional defense based on the idea that you had a constitutional right to engage in the conduct that you engaged in. Sure, but that's accepting the statute by its terms. Why can't he argue, yeah, I've read it. I get it. I understand. My point is that that limitation, I'm kind of speaking, is unconstitutional. You can't preclude me from challenging this on federal constitutional grounds. To so preclude me is itself a violation of the due process clause. I mean, I suppose potentially that argument could have some purchase with Texas judges, but that's not a reason to deny interpleader jurisdiction or to abstain from exercising it here. The interpleader court has business in front of it, and it ought to dispose of that business. And I think it's clear that the federal court is a superior forum in which to litigate those kinds of constitutional defenses. Very briefly, he also mentions the idea of consolidating cases in Texas. But as we point out in our reply brief, first of all, you can't consolidate not yet filed claims the way you can interpleader. And second, the anti-transfer provision of SB8 basically says all parties have to agree before the consolidation can happen. So that is, I think, a pipe dream. At the end of the day, what we're being told in essence here is the only way to avoid vexatious litigation is to pay up, right? Pay the ransom to somebody without standing, who's a complete stranger, who's seeking a bounty, right? That, I think, is not a disposition that this court ought to be comfortable with. And to answer your question briefly, I'm not aware of any invocation of form non-convenience in this case either. Thank you, your honors. All right. Thank you very much. Our thanks to all counsel and special thanks to you, Mr. Paul, for taking this appointment on a pro bono basis to act as a friend of the court to defend the district court's decision. Thank you very much. Thank you.